UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **CAROL DIECKMANN** <br> 1560 Donaldson Place <br> Cincinnati, OH 45223 | : <br> : <br> : | Case No. 1:17-CV-00073 |
| **Plaintiff,** | : | |
| v. | : | |
| **CARE CONNECTION OF CINCINNATI, LLC** <br> 7265 Kenwood Rd., # 363 <br> Cincinnati, OH 45236 | : <br> : <br> : | |
| and | : | |
| **GUARDIAN HEALTHCARE HOLDINGS, INC.** <br> 6200 South Syracuse Way <br> Suite 200 <br> Greenwood Village, CO 80111 | : <br> : <br> : <br> : | |
| and | : | |
| **ENVISION HEALTHCARE CORPORATION** <br> 6363 S. Fiddlers Green Circle <br> 14th Floor <br> Greenwood Village, CO 80111 | : <br> : <br> : <br> : | |
| **Defendants.** | : | |

_____

**COMPLAINT AND JURY DEMAND**
_____

Now comes Plaintiff Carol Dieckmann, who for her Complaint against Defendants Care Connection of Cincinnati, LLC, Guardian Healthcare Holdings, Inc., and Envision Healthcare Corporation, states as follows:

## I.  PRELIMINARY STATEMENT

1. This action arises under the False Claims Act, 31 U.S.C. § 3730(h), *et seq.* Ms. Dieckmann, a former employee of Defendants, alleges that she engaged in protected activity by refusing to defraud the federal government.  Specifically, she was told that if she did not engage in actions that she reasonably and in good faith believed constituted fraud upon the federal government, she must resign.  As a result, she resigned.

2. Ms. Dieckmann seeks relief for the aforementioned acts and/or omissions in the form of compensatory damages for twice her economic injuries, compensatory damages for her noneconomic injuries, equitable relief in the form of reinstatement or front pay, and punitive damages.  Finally, Ms. Dieckmann seeks payment of her reasonable attorney fees and costs in prosecuting this matter.

## II.  JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, 31 U.S.C. § 3730(h).

4. Venue with this Court is appropriate because the acts complained of herein occurred within the judicial district of the Southern District of Ohio.

## III.  PARTIES

5. Plaintiff Carol Dieckmann is a United States citizen and a resident of Cincinnati, Ohio.  Ms. Dieckmann is a registered nurse.  She was employed at Defendant Care Connection of Cincinnati, LLC.

6. Defendant Care Connection of Cincinnati, LLC is an Ohio limited liability company with its principal place of business in Hamilton County, Ohio.  Care Connection of Cincinnati, LLC provides home healthcare services to patients in the Greater Cincinnati

area.  Upon information and belief, Care Connection of Cincinnati, LLC is a subsidiary of Defendants Envision Healthcare Corporation and Guardian Healthcare Holdings, Inc.

7.  Defendant Guardian Healthcare Holdings, Inc. is a Delaware corporation that conducts business in the Southern District of Ohio.  Upon information and belief, Guardian Healthcare Holdings, Inc. is a subsidiary of Defendant Envision Healthcare Corporation.

8.  Defendant Envision Healthcare Corporation is a Delaware corporation that conducts business in the Southern District of Ohio.  Upon information and belief, Envision Healthcare Corporation owns and operates Defendants Guardian Healthcare Holdings, Inc. and Care Connection of Cincinnati, LLC.

## IV.  STATEMENT OF THE CASE

9.  Ms. Dieckmann began her employment with Care Connection of Cincinnati, LLC in April 2012.  Her title was quality information nurse.  In that role, she reviewed all OASIS documents for completion and accuracy before Care Connection submitted those documents to Medicare for reimbursement.  OASIS documents contain information related to the assessment of patients and impact Medicare reimbursement.

10.  In 2014, Defendants Envision Healthcare Corporation and Guardian Healthcare Holdings, Inc. acquired Care Connection of Cincinnati, LLC.

11.  In December 2014, Care Connection contracted with FAZZI, a company that provides third-party medical coding services, to perform the medical coding portion of the OASIS forms for Care Connection.

12.  In the ensuing weeks and months, Ms. Dieckmann began to notice that FAZZI frequently made or tolerated errors when coding medical conditions of patients serviced by Care Connection.  In particular, Ms. Dieckmann noticed that FAZZI routinely

used inaccurate codes so as to reflect the performance of services for conditions that did not actually exist. The result was that Care Connection received higher amounts of Medicare reimbursement than it would have otherwise.

13. Ms. Dieckmann reported her observations about FAZZI's false coding to Robert James, the founder of Care Connection, and Beverly Nabor, the quality information supervisor. Mr. James said that he did not want to hear about it and told Ms. Dieckmann that she should discuss her concerns with Ms. Nabor. Ms. Nabor told Ms. Dieckmann that the coding problems were not her concern and that the problems would be addressed with FAZZI. Because Ms. Dieckmann was not required to personally attest to the accuracy of the medical coding, she continued to process the OASIS forms as instructed by Ms. Nabor.

14. Despite Ms. Dieckmann's repeated complaints, the false coding continued. Ms. Dieckmann regularly discussed these issues with her fellow quality information nurse at Care Connection, Cathy Owsley. In or about March 2015, Ms. Owsley informed Ms. Dieckmann that she had reported these repeated coding errors to the United States Department of Health and Human Services.

15. Shortly thereafter, Ms. Dieckmann, Ms. Owsley, Ms. Nabor, and Mr. James received an email from Envision's legal department stating that the company attorneys were looking into the company's processes, and if that they were contacted by any "outside sources," they must not discuss the company's processes and notify the legal department immediately.

16. In November 2016, Tammy Kuntzman replaced Ms. Nabor as quality information supervisor. On November 4, 2016, Ms. Kuntzman came to Care Connection's Cincinnati office to meet with Ms. Dieckmann and Ms. Owsley. She explained to Ms.

4

Dieckmann and Ms. Owsley that Care Connection needed to start changing the way they completed the OASIS documents in order to improve Care Connection's "Star Rating." The Star Rating is a system that rates a medical provider's performance, and that rating affects whether the provider receives bonuses or penalties from Medicare.

17. On November 9, 2016, Ms. Dieckmann, Ms. Owsley, and two others, again met with Ms. Kuntzman. At that meeting, Ms. Kuntzman presented them with a document called the QA-OASIS Review Process. In the course of discussing that document and the new requirements for completing the OASIS forms, Ms. Kuntzman informed Ms. Dieckmann and Ms. Owsley that they were now required to change certain information completed by the field staff on the OASIS document. Ms. Dieckmann told Ms. Kutzman that they could not make those changes because they did not observe the patients, and that such changes would constitute Medicare fraud. Ms. Kuntzman insisted that making the changes did not constitute fraud, but rather that Ms. Dieckmann just needed to be educated. Ms. Kuntzman then said: "You need to draw a line in the sand and do what you are told, or get out." Ms. Kuntzman repeatedly raised her voice during the meeting.

18. On November 10, 2016, Ms. Kuntzman again met with Ms. Dieckmann, Ms. Owsley, and two others. Sheri Flannery, Ms. Kuntzman's supervisor, also attended. Ms. Kuntzman repeated that Ms. Dieckmann and others needed to make changes on the OASIS forms, such as changing dates to make it appear as if patients were receiving services within a particular time period so as to falsely boost Care Connection's Star Rating. Ms. Dieckmann once again objected and stated that making such changes constituted Medicare fraud. Ms. Kuntzman again raised her voice and repeated her

threat that Ms. Dieckmann and the others do what they are told or get out. Ms. Flannery delivered the same threat during the meeting.

19. On November 14, 2016, Ms. Kuntzman once again called a meeting with Ms. Dieckmann, Ms. Owsley, and the two others. Ms. Kutzman again raised her voice and told them that they needed to stop arguing with her and telling her what they are not going to do. After approximately two hours, Ms. Kuntzman abruptly stopped the meeting, said they were "not getting anywhere," and announced she would meet with each person individually. She said that she was going to start with Ms. Dieckmann.

20. On November 18, 2016, Ms. Dieckmann attended a meeting with Ms. Kuntzman and Tammy Lilly, a human resources associate. Ms. Kuntzman started by saying "you need to get on board and allow us to educate you to do your job better." Ms. Dieckmann referred to the QA-OASIS Review Process form, but Ms. Kuntzman interrupted her and said: "I won't talk about that anymore. You are just going to do it." Ms. Dieckmann responded: "I'm not going to do it. I'm not going to engage in fraud." Ms. Dieckmann again explained why she believed the new process constituted fraud. Ms. Kutzman again began to raise her voice. Ms. Dieckmann said that she was not going to tolerate it anymore and tendered her resignation.

21. Ms. Dieckmann provided Ms. Kuntzman with a resignation letter that stated, in pertinent part: "I cannot be a part of any Medicare fraud. I am not the person who called the feds."

## V. STATEMENT OF THE CLAIMS

### Count 1: Discrimination

### (31 U.S.C. § 3730(h))

22. Ms. Dieckmann incorporates paragraphs 1 through 21 as if fully rewritten herein.

23. Ms. Dieckmann engaged in protected activity by taking lawful action to stop one or more violations of the False Claims Act. Specifically, she objected to Defendants' new policies regarding OASIS forms and refused to make changes she reasonably and in good faith believed would constitute Medicare fraud.

24. Defendants knew that Ms. Dieckmann engaged in the protected activity.

25. As a result of her protected activity, Defendants discharged Ms. Dieckmann by demanding that she either engage in what she reasonably and in good faith believed to be Medicare fraud or resign. Ms. Dieckmann reasonably chose to resign rather than engage in criminal conduct.

26. As a result of Defendants' illegal actions, Ms. Dieckmann has suffered damages, including lost wages, lost benefits, and emotional distress.

27. Defendants acted with malice and a reckless disregard for Ms. Dieckmann's federally-protected rights.

### PRAYER FOR RELIEF

Wherefore, Ms. Dieckmann demands judgment against Defendants as follows:

1. An award of two times Ms. Dieckmann's back pay and benefits;

2. an award of compensatory damages for all noneconomic damages suffered;

3. an award of Ms. Dieckmann's reasonable attorney fees and costs;

4. an award of punitive damages; and

5. an award of any other relief in law or equity to which Ms. Dieckmann is entitled.

Respectfully submitted,

/s/ Brian J. Butler
Brian J. Butler (OH No. 0082675)
Marc D. Mezibov (OH No. 0019316)
MEZIBOV BUTLER
615 Elsinore Place, Suite 105
Cincinnati, OH 45202
Phone: 513.621.8800
Fax: 513.621.8833
mmezibov@mezibov.com
bbutler@mezibov.com

*Attorneys for Plaintiff Carol Dieckmann*

## JURY DEMAND

Plaintiff Carol Dieckmann demands a jury trial to resolve issues of fact related to the Complaint.

/s/ Brian J. Butler
Brian J. Butler (OH No. 0082675)